## STEAMSHIP COMPANY *v.* PORTWARDENS.

A statute of a State enacting that the masters and wardens of a port within it, should be entitled to demand and receive, in addition to other fees, the sum of five dollars, whether called on to perform any service or not, for every vessel arriving in that port, is a regulation of commerce within the meaning of the Constitution, and also, a duty on tonnage, and is unconstitutional and void.

ERROR to the Supreme Court of Louisiana.

The Constitution of the United States ordains that Congress shall have the power to "regulate commerce with foreign nations and among the several States;" that "no State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws;" and that "no State shall, without the consent of Congress, lay any duty on tonnage."

With these prohibitions of the Constitution upon State legislation in force as the supreme law of the land, a statute of the State of Louisiana, passed on the 15th of March, 1855, enacted that the master and wardens of the port of New Orleans should be entitled to demand and receive, in addition to other fees, the sum of five dollars, *whether called on to perform any service or not*, for every vessel arriving in that port.

Under this act the sum of five dollars was demanded of the steamship Charles Morgan, belonging to the Southern Steamship Company of New Orleans, and payment being refused, suit was brought against the owner and judgment recovered in a justice's court, which judgment was subsequently affirmed by the Supreme Court of the State. The object of this suit in error was to reverse that judgment.

The question presented by the record, therefore, was this: Is the act of the legislature of Louisiana repugnant to the Constitution of the United States?

*Mr. Durant, for the Port-Master and Wardens, defendants in error :*

The statute in question is not within any of the prohibitions of the Constitution.

1. It is not an attempt to " regulate commerce." It is but a regulation of the police of the port of New Orleans, and belongs to that class of laws which it will be admitted that the States have a right to enact; such as inspection, quarantine and health laws, and those regulating their pilots, or internal commerce, &c.

2. Nor can the fee of five dollars allowed to the portwardens be viewed as an " impost or duty on imports or exports." The fee is to be paid to the wardens for the same reason that half pilotage is to be paid to pilots when they offer their services, although the services are not accepted. It has always been held that this part of the pilotage law is constitutional.* The office and functions of portwardens are as indispensable for the purposes of navigation and commerce, as the office and functions of pilots.

3. Nor yet is it a " duty upon tonnage," which by necessary intendment is a duty proportioned to the tonnage of the vessel; that is to say, a certain rate or so much per ton.

*Mr. S. N. Salomon, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

That the power to regulate commerce with foreign nations and among the States is vested in Congress, and that no State without the consent of Congress can lay any duties or imposts on imports or exports, except what may be absolutely necessary for executing its inspection laws, or any duty of tonnage, are familiar provisions of the Constitution, which have been frequently and thoroughly examined in former judgments of this court.

The power to regulate commerce was given to Congress in comprehensive terms, and with the single exception of the

---

* Cooley v. Board of Wardens, 12 Howard, 299.

power to lay duties on exports.   And it was thus given, so far as it relates to commerce between the States, with the obvious intent to place that commerce beyond interruption or embarrassment arising from the conflicting or hostile State regulations.

At the same time it was not intended to interfere with the exercise of State authority upon subjects properly within State jurisdiction.   The power to enact inspection laws is expressly recognized as not affected by the grant of power to regulate commerce.   And some other powers, the exercise of which may, in various degrees, affect commerce, have always been held not to be within the grant to Congress. To this class it is settled belong quarantine and other health laws, laws concerning the domestic police, and laws regulating the internal trade of a State.

There are other cases in which, either by express provision or by omission to exercise its own powers, Congress has left to the regulation of States matters clearly within its commercial powers.   Of this description were the pilot laws recognized as valid by the act of 1789,* and 1837.†

That the act of the legislature of Louisiana is a regulation of commerce can hardly be doubted.   It imposes a tax upon every ship entering the port of New Orleans, to be collected upon every entry.   In the case of a steamer plying between that port and ports in adjoining States of Alabama or Texas, it becomes a serious burden, and works the very mischief against which the Constitution intended to protect commerce among the States.

It is claimed, however, that the tax is for compensation to the master and wardens, whose duty it is to perform, when called upon, the various services required of portwardens, and that the law for its collection stands therefore on the same constitutional grounds as the State laws authorizing the collection of pilotage.

But there are two answers to this proposition.

The first is, that no act of Congress recognizes such laws

---

* 1 Stat. at Large, 54.                     † 5 Id. 153.

as that of Louisiana as proper and beneficial regulations, while the State laws in respect to pilotage are thus recognized.

The second is, that the right to recover pilotage and half pilotage, as prescribed by State legislation, rests not only on State laws but upon contract. Pilotage is compensation for services performed; half pilotage is compensation for services which the pilot has put himself in readiness to perform by labor, risk, and cost, and which he has actually offered to perform.* But in the case before us there were no services and no offer to perform any. The State law is express. It subjects the vessel to the demand of the master and wardens, " whether they be called on to perform any service or not."

It may be true that the existence of such a body of men is beneficial to commerce, but the same is true of the government of the State, of the city government, of the courts, of the whole body of public functionaries. If the constitutionality of the charge for the benefit of the master and wardens can be maintained upon the ground that it secures compensation for services, it is difficult to perceive upon what grounds the constitutionality of any State law imposing taxes for the benefit of the State government upon vessels landing in its ports, can be questioned.

We think it quite clear, therefore, that the regulation of commerce made by the act before us comes within none of the limitations or exceptions to the general rule of the Constitution that the regulation of commerce among the States is in Congress.

We think, also, that the tax imposed by the act of Louisiana is, in the fair sense of the word, a duty on tonnage. In the most obvious and general sense it is true, those words describe a duty proportioned to the tonnage of the vessel; a certain rate on each ton. But it seems plain that, taken in this restricted sense, the constitutional provision would not fully accomplish its intent. The general prohibition upon the

---

* Steamship Company *v.* Joliffe, 2 Wallace, 450.

States against levying duties on imports or exports would have been ineffectual if it had not been extended to duties on the ships which serve as the vehicles of conveyance. This extension was doubtless intended by the prohibition of any duty of tonnage. It was not only a *pro rata* tax which was prohibited, but any duty on the ship, whether a fixed sum upon its whole tonnage, or a sum to be ascertained by comparing the amount of tonnage with the rate of duty.

In this view of the case, the levy of the tax in question is expressly prohibited.

On the whole we are clearly of opinion that the act of the legislature of Louisiana is repugnant to the Constitution, and that the judgment of the Supreme Court of the State must therefore be

REVERSED.