PEETE v. MORGAN.

A State cannot, in order to defray the expenses of her quarantine regulations, impose a tonnage tax on vessels owned in foreign ports, and entering her harbors in pursuit of commerce.

APPEAL from the Circuit Court for the Eastern District of Texas.

The Constitution ordains as follows:

"No State shall without the consent of Congress lay any duty on tonnage.

"Congress shall have power to regulate commerce between the States."

With these provisions of the Constitution in force, the legislature of Texas, by an act of August 13th, 1870, enacted that every vessel arriving at the quarantine station of any town on the coast of Texas, should pay $5 for the first hundred tons, and one and a half cents for each additional ton.

In this state of things Morgan, a citizen of New York—and the owner of two lines of steamers, registered and enrolled in that city, and running from ports in Louisiana to ports in Texas, and back to the ports whence they sailed,—filed a bill in the court below to enjoin one Peete, health officer at the port of Galveston, from the future collection of quarantine fees, exacted under the act abovementioned, from all his vessels coming to the quarantine ground of the said port.

The enactment laying the tax was apparently passed on

an assumption that it was justified by the language of this court in *Gibbons* v. *Ogden*,* and where in speaking of inspection laws, this court say:

"They form a portion of that immense mass of legislation which embraces everything within the territory of a State, not surrendered to the General government, all which can be most advantageously exercised by the States themselves.   Inspection laws, *quarantine laws*, health laws of every description, as well as laws for regulating the internal commerce of a State, and those which respect turnpike-roads, ferries, &c., are component parts of this mass."

The court below granted a perpetual injunction, and Peete, the health officer, brought the case here on appeal from this decree.

The question was:

Can a State levy a tonnage tax on vessels owned in foreign ports, and entering her harbors in the pursuit of commerce, in order to defray the expenses of her quarantine regulations?

*Mr. P. Phillips, for Morgan, the appellee; no counsel appearing for the health officer, Peete, the appellant.*

Mr. Justice DAVIS delivered the opinion of the court.

That the power to establish quarantine laws rests with the States, and has not been surrendered to the General government is settled in *Gibbons* v. *Ogden*.   The source of this power is in the acknowledged right of a State to provide for the health of its people, and although this power when set in motion may in a greater or less degree affect commerce, yet the laws passed in the exercise of this power are not enacted for such an object.   They are enacted for the sole purpose of preserving the public health, and if they injuriously affect commerce, Congress, under the power to regulate it, may control them.   Of necessity, they operate on vessels engaged in commerce, and may produce delay or in-

---

* 9 Wheaton, 203.

convenience, but they are still lawful when not opposed to any constitutional provision, or any act of Congress on the subject.

It is evident that the power to establish quarantine regulations cannot be executed without the State possesses the means to raise a revenue for their enforcement, but it is equally evident that the means used for this purpose must be of such a character as the restrictions imposed by the Federal Constitution upon the taxing power of the States authorize. We are not called upon in this case to go into the general subject of the limitations imposed by these restrictions, because the tax in question is manifestly outside the jurisdiction of the State to impose; as it is a " duty of tonnage," within the meaning of the Constitution.

This duty was doubtless imposed to raise revenue, but Chief Justice Marshall, in commenting on this subject in *Gibbons* v. *Ogden*, says: " It is true, that duties may often be, and in fact often are, imposed on tonnage, with a view to the regulation of commerce; but they may be also imposed with a view to revenue; and it was, therefore, a prudent precaution to prohibit the States from exercising this power." This power cannot be exercised without the permission of Congress, and Congress has never consented that the States should lay any duty on tonnage. On the contrary, so apprehensive was Congress that its legislation in 1799,* directing the collectors of customs and officers commanding forts and revenue cutters to aid in the execution of the quarantine and health laws of the States, rendered necessary on account of the prevalence of yellow fever in New York, might be construed into an admission of the right of the States to lay this duty, that it used the following words of exclusion: "That nothing herein shall enable any State to collect a duty of tonnage or impost, without the consent of the Congress of the United States thereto."

It is, however, not necessary to discuss this subject, as it has been recently fully considered by this court in the *State*

---

* 1 Stat. at Large, 619.

*Tonnage Tax Cases*, reported in 12th Wallace.* In these cases the law of Alabama levied a tax at so much per ton on all steamboats. The boats on which the tax was levied were owned by citizens of the State, and were employed exclusively in the internal commerce of the State, over which Congress has no control. This court, while conceding the full power of the State to tax the property of its citizens, held that the inhibition in the Federal Constitution prevented the State from taxing in this mode. Much more does this inhibition apply when the vessels are owned by citizens of another State, and are engaged in commerce between the States, over which Congress has control.

DECREE AFFIRMED.