### INMAN STEAMSHIP COMPANY *v.* TINKER.

So much of the act of the legislature of New York, passed May 22, 1862, amended April 17, 1865, as requires, with certain exceptions, all ships or vessels which enter the port of New York, or load or unload, or make fast to any wharf therein, to pay a certain percentage per ton, to be computed on the tonnage expressed in the registers of enrolments of such ships or vessels respectively, is in violation of the Constitution of the United States, and therefore void.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

This was a bill in equity filed by the appellant for an injunction to restrain the appellee, the captain of the port of New York and his successors in office, from collecting a fee of one and one-half per cent per ton, to be computed from the registered tonnage of certain vessels entering that port, pursuant to sect. 6, c. 487, of the acts of the legislature of the State of New York, entitled "An Act defining and regulating the powers, duties, and compensation of the captain of the port and harbor-masters of the port of New York, passed May 22, 1862, three-fifths being present. Amended April 27, 1865."

That section is as follows: —

"The following fees shall be collected under this act, and no others: All ships or vessels of the United States of one hundred tons burden or more, except lighters, tugs, barges, and canal-boats,

sound and river steamboats employed on regular lines, and all ships or vessels that are permitted by the laws of the United States to enter on the same terms as vessels of the United States, which shall enter the said port of New York, or load or unload, or make fast to any wharf therein, shall pay one and one-half of one per cent per ton, to be computed from the tonnage expressed in the registers of enrolments of such ships or vessels respectively; all other foreign ships or vessels which shall arrive at and enter the same port, and load or unload, or make fast to any wharf therein, shall pay three cents per ton, to be computed on the tonnage expressed in the registers or documents on board. Where difficulties arise between vessels of less than one hundred tons burden, and the captain of the port or a harbor-master shall be called upon to settle the same, the vessel, canal-boat, barge, or lighter in fault shall pay two dollars. Such fees shall be paid by the masters, owners, or consignees of such ships or vessels, at the office of the captain of the port, or to persons authorized by him to collect the same, within forty-eight hours after the arrival of such ship or vessel. In default of such payment, the same having been duly demanded, such masters, owners, or consignees, on whom such demand shall have been previously made, shall pay double the amount of such fees, to be sued for and recovered, in the name of the captain of said port, in any court having cognizance thereof. All fees under this act shall be paid to the captain of the port, or upon his written order; and he shall have power to employ the necessary assistance in making collections of the same, at an expense of not exceeding five per cent upon the amount collected, which expense shall not be considered as the ordinary expense of the office. The captain of the port shall have power to designate some harbor-master as his deputy, who may, during his absence, or in case of a vacancy in his office, perform all the duties belonging to the office of captain of the port; and the acts of said harbor-master, so performed, shall be valid and binding."

The bill alleges that the complainant, the Inman Steamship Company, a corporation created under the laws of Great Britain, is the owner of a line of steamships belonging to Liverpool, and running thence back and forth to the port of New York, three of which vessels in every five weeks arrive at and enter said port, and load and unload and make fast to a wharf therein; that on account thereof the defendant has heretofore exacted upwards of $125 every five weeks, or over $1,300 per annum, whether or not any services were rendered

by or required of him and the harbor-masters. The bill further alleges that the complainant, on failure so to pay such fee, is liable to be charged in double the amount, to have its vessels attached and seized, and to a multiplicity of suits on account thereof.

The defendant demurred to the bill generally, for want of equity. The court below sustained the demurrer and dismissed the bill; whereupon the complainant appealed to this court.

*Mr. William M. Evarts* and *Mr. Francis Lynde Stetson* for the appellant.

·The sixth section of the act under which the fees in question are collected is a regulation of commerce, and therefore unconstitutional and void. *Henderson* v. *The Mayor, &c.*, 92 U. S. 259; *Cooley* v. *Board of Wardens*, 12 How. 299; *Gibbons* v. *Ogden*, 9 Wheat. 203; *Steamship Co.* v. *Port Wardens*, 6 Wall. 31; *Peete* v. *Morgan*, 19 id. 581; *State Tonnage Tax Cases*, 12 id. 204; *City of New York* v. *Miln*, 11 Pet. 102.

The act, without the consent of Congress, lays a duty on tonnage, and is, therefore, in violation of sect. 10 of the first article of the Constitution. *State Tonnage Tax Cases, supra; Steamship Co.* v. *Port Wardens, supra; Peete* v. *Morgan, supra; Cannon* v. *New Orleans*, 20 Wall. 577.

*Mr. Henry J. Scudder, contra.*

The act in question is not a regulation of commerce within the intendment of the Constitution, but an exercise of a power reserved to the State for the proper government of persons within its jurisdiction. It is in aid and furtherance of commerce, and not to its hindrance. *Gibbons* v. *Ogden*, 9 Wheat. 591; *City of New York* v. *Miln*, 11 Pet. 102; *Cooley* v. *Board of Wardens*, 12 How. 299.; *Steamboat New York* v. *Rea*, 18 id. 223; *Owners of the Brig James Gray* v. *Owners of the Ship John Frazer et al.*, 21 id. 184.

The control by a State of its internal affairs, with a view to the maintenance of order and public safety, does not infringe the powers of Congress to regulate commerce, although it may affect the subjects or instruments of commerce. *Brown* v. *Maryland*, 12 Wheat. 419; *United States* v. *Dewitt*, 9 Wall. 41; *Cooley* v. *Board of Wardens, supra; Port Wardens* v. *Ship M. J. Ward*, 14 La. 293; *Steamship Co.* v. *Joliffe*, 2 Wall. 450.

The adaptation of the fees to a standard of tonnage is the most just and convenient method of measuring them. The act does not lay a duty of tonnage.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is a bill in equity brought to enjoin the appellee from collecting a port charge imposed upon the vessels of the appellant in the harbor of New York, by an act of the legislature of the State, a copy of which is annexed to the bill, and made a part of it. The bill sets forth the following facts: The appellant is a foreign corporation, and the owner of three steamships, each of which enters the port of New York once within every five weeks. The vessels are respectively of the burden of 2,950 tons, 2,823 tons, and of 2,712 tons. All these vessels belong to the port of Liverpool, in England, and run between that port and the port of New York. The character and object of the act of the legislature complained of are indicated in its title, which is, "An Act defining and regulating the powers, duties, and compensation of the captain of the port and harbormasters of the port of New York, passed May 22, 1862, three-fifths being present; amended April 17, 1865." The sixth section declares: —

"The following fees shall be collected under this act, and no others: All ships or vessels of the United States of one hundred tons burden or more, except lighters, tugs, barges and canal-boats, sound and river steamboats employed on regular lines, and all ships or vessels that are permitted by the laws of the United States to enter on the same terms as vessels of the United States, which shall enter the port of New York, or load or unload, or make fast to any wharf therein, shall pay one and one half of one cent per ton, to be computed from the tonnage expressed in the registers of enrolments of such ships or vessels respectively; and all other foreign ships which shall arrive at and enter the same port, and load or unload, or make fast to any wharf therein, shall pay three cents per ton, to be computed on the tonnage expressed in the registers or documents on board," &c.

In default of payment as prescribed, it is declared that the master, owner, or consignee, upon whom demand of payment

may have been made, shall pay double the amount of such fees, to be recovered in the name of the captain of the port. The amount which the appellant was required to pay, and did pay, was one cent and a half per ton upon the tonnage of their three vessels respectively upon every arrival of each one in the American port. The bill seeks to relieve them from this burden in future. The respondent demurred to the bill in the court below. The demurrer was sustained, and the bill dismissed. The case was thereupon removed to this court by appeal.

The following clauses of the Constitution of the United States are invoked in behalf of the appellant as sustaining the bill : —

ART. 1, SECT. 10.  " No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws, and the net produce of all duties and imposts laid by any State on imports or exports shall be for the use of the treasury of the United States, and all such laws shall be subject to the revision and control of the Congress."

" No State shall, without the consent of Congress, lay any duty of tonnage, keep troops or ships of war in time of peace, enter into any agreement or compact with another State or with a foreign power, or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay."

It is not claimed that Congress ever consented to the passage of the act of 1862, or of the amendatory act of 1865.

It is insisted by the counsel for the appellant that the charge here in question is a regulation of commerce, which it was not competent for the State to prescribe, and also a tonnage duty, which the State was forbidden to impose.

Our remarks will be confined to the latter proposition.

The classification of the powers of the national government, the several categories into which they may be resolved, and the rights and powers of the States in our complex system of polity, have been so often considered by this court, that it is unnecessary upon this occasion to re-examine the subject. *Gilman* v. *Philadelphia*, 3 Wall. 713 ; *Ex parte McNeil*, 13 id. 236.

Tonnage, in our law, is a vessel's "internal cubical capacity in tons of one hundred cubic feet each, to be ascertained" in the manner prescribed by Congress. Act of May 6, 1864, 13 Stat. pp. 70, 72; Rev. Stat. U. S. 804, § 4153. "Tonnage duties are duties upon vessels in proportion to their capacity." Bouv. Law Dict., "Tonnage."

The term was formerly applied to merchandise. Cowel, in his Law Dictionary, published in 1708, thus defines it: "Tonnage (*tonnagium*) is a custom or impost paid to the king for merchandise carried out or brought in ships, or such like vessels, according to a certain rate upon every ton, and of this you may read in the statutes of 12 Edw. IV. c. 3; 6 Hen. VIII. c. 14," &c. The vital principle of such a tax or duty is that it is imposed, whatever the subject, solely according to the rule of weight, either as to the capacity to carry, or the actual weight of the thing itself.

In this law of the State there are several important points that must not be overlooked. The charge is not exacted for any services rendered or offered to be rendered. If the vessel enter the port and immediately take her departure, or load or unload, or make fast to any wharf, either of these things disjunctively brings her within the act, and makes her liable to the burden prescribed.

The charge is applied wholly irrespective of the *ad valorem* principle.

If either of the three vessels of the appellant was new and making her first voyage, and another of the same tonnage was making her last trip before being broken up, and the former were of many times the value of the latter, the act would apply the same procrustean rule to both. The rate of payment, and the amount to be paid, would, in both cases, be the same.

The act makes a discrimination. To one class of vessels it applies the rate here in question, to another class double that rate, and to yet another class none at all. Those belonging to the latter are wholly exempted.

We think a clearer case of the imposition of a tonnage duty than is presented in the record before us can hardly be imagined. If the law had been passed by Congress instead of the State, and the charge imposed had been expressly designated a

*tonnage* duty, its character as such could not appear in a stronger light. But the name is immaterial: it is the substance we are to consider.

It does not advance the argument in behalf of the appellee to maintain that the regulations prescribed by the act are necessary and proper in the port for which they are provided. It is not our purpose to examine them, except as to the proposition in hand. It may be that, aside from the imposition of this tax, they contain nothing exceptionable, and that in all other respects they are wise and well considered. Similar provisions, varying according to local circumstances, exist at all important points throughout the world whither marine commerce finds its way. They are indispensable to those engaged in that business. They fence out many evils, and promote largely the convenience and the welfare of those engaged in this field of enterprise. Perhaps it is hardly too strong language to say, they are well nigh vital to commerce itself. It may be conceded, also, that foreign steamships and other vessels visiting the ports of a State for business purposes may be made liable by the laws of such State for all reasonable and proper port charges. This is but a fair return for the benefits received. But such charges must not be repugnant to the Constitution of the United States. Any conflict is fatal to them. The warrant for such competent legislation may be found in that immense mass of police and other powers which the States originally possessed, which they have not parted with, and which still belongs to them; or it may in some cases be found among those which the States may exercise, but only until Congress shall see fit to act upon the subject. The authority of the State then retires, and lies in abeyance until the occasion for its exercise shall recur. *Ex parte McNeil*, 13 Wall. 236.

"Powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Const. amend. 10.

The State, in passing this law imposing a tonnage duty, has exercised a power expressly prohibited to it by the Constitution. In that particular the law is, therefore, void. This view is sustained by the rulings of this court in the *State Tonnage Tax Cases*, 12 Wall. 204, and *Cannon* v. *New Orleans*, 20 id.

577.  See also *Steamship Company* v. *Port Wardens*, 6 id. 31, and *Peete* v. *Morgan*, 19 id. 581.

The tax imposed is not merely a mode of measuring the compensation to be paid.  The answer to this suggestion is, that it is exacted where there is nothing to be paid for, and has no reference to any circumstance in this connection but the tonnage of the vessel and the class to which it belongs.

The commerce clauses of the Constitution had their origin in a wise and salutary policy.  They give to Congress the entire control of the foreign and inter-state commerce of the country. They were intended to secure harmony and uniformity in the regulations by which they should be governed.  Wherever such commerce goes, the power of the nation accompanies it, ready and competent, as far as possible, to promote its prosperity and redress the wrongs and evils to which it may be subjected.  It was deemed especially important that the States should not impose tonnage taxes.  Hence the prohibition in the Constitution, without the assent of Congress previously given.  The confusion and mischiefs that would ensue if this restriction were removed are too obvious to require comment.  The lesson upon the subject taught by the law before us is an impressive one.

How the charges, which it is conceded the State may impose, must be shaped in order to be valid, is a subject which it is not within our province to consider, and in regard to which it would not be proper for us to express any opinion.  We decide only the point before us.

*Decree reversed, and cause remanded with directions to proceed in conformity to this opinion.*

MR. CHIEF JUSTICE WAITE did not sit in this case, nor take any part in its decision.