BOARD OF HARBOR COMMISSIONERS v. PASHLEY.

Under a statute which created a board of harbor commissioners for the port of Charleston, authority was given to this board to levy such fees and harbor or port charges as were necessary to pay its officers and to defray its expenses. The board imposed a scale of charges, according to kind, upon all vessels entering that port, the amount in each case being determined by the "length over all" in feet. *Held,* that the charge not being for services rendered to a vessel, it was a tonnage duty, which is prohibited by the constitution of the United States.

Before ALDRICH, J., Charleston, July, 1882.

This was an action commenced in April, 1882, by the Board of Harbor Commissioners of Charleston against Frank Pashley, master, and the owners of the schooner "Marcus Edwards," for the recovery of $5.90. The case seems to have been tried by the Circuit judge. He rendered the following judgment:

This is a case brought for the enforcement of certain fees charged under act of Assembly known as the Harbor Commission Act (17 *Stat.* 604). The allegations of the complaint are all admitted, viz.: That the schooner "Marcus Edwards" did, on the tenth day of March, 1882, arrive at the port of Charleston; that Frank Pashley, master, reported her arrival to the harbor master, and recorded her name, tonnage, length and description of the vessel; that the fee of $5.90 was demanded of said Pashley by the proper officer of the Board of Harbor Commissioners, and that payment of the same was refused.

The act provides that the Board of Harbor Commissioners "shall be and are hereby invested with full power and authority to levy and collect from all vessels entering into and trading with the port of Charleston such fees and harbor or port charges, not inconsistent with law, as in their discretion may be necessary to pay the said harbor master and port wardens for the services required of them, and to defray the necessary expenses attendant upon the execution of the duties devolved upon the said board under this act." In accordance with which, the said board ordained a scale of charges, in proportion to the length over all of such vessels as should become liable to port charges, the charges for fore-and-aft schooners being five cents per foot. The account sought to be collected is in conformity to this scale, and amounts to $5.90.

The defendant alleges that the said vessel was, at the time mentioned in the complaint, and now is an American vessel, owned by citizens of States of the United States other than the State of South Carolina, duly licensed for the coasting trade, and engaged in commerce and navigation between the several States of the United States, and that the said clearing tax and fee claimed are expressly prohibited by section 10, article I., constitution of the United States.

Section 10, article I., constitution United States, or so much thereof as may be applicable to this case, is as follows:

"No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws.

"No State shall, without the consent of Congress, levy any duty on tonnage."

Chief Justice Marshall says this constitutional prohibition is on the taxing power, not on that to regulate commerce. Hence, if the object of this act is to regulate commerce and not to raise a revenue, it does not come within the constitutional inhibition. What then is the object of the act? Clearly to establish a police for the harbor and to assist ships trading with the port of Charleston to discharge and take in freights with despatch and safety by enforcing a system of harbor regulations. There is no provision for raising revenue, because the act expressly limits the power of the board to levy and collect "such fees and harbor or port charges ＊　＊　＊ as may be necessary to pay the said harbor master and port wardens for the services required of them, and to defray the necessary expenses attendant upon the execution of the duties devolved upon the said board under the act." And the ratio of the charges indicates that it can be intended only to defray the necessary expenses of such a system.

It is objected that this is a charge without reciprocal services. But the services are sufficiently rendered by the board of commissioners holding themselves in readiness and being prepared to facilitate and promote the interests of commerce within the port, and *non constat* that special services were not rendered to this particular vessel.

It is further objected that the charge is a tax on tonnage. If this were so it would clearly be a violation of the letter of the constitution, and not of its spirit and intent, for we have seen that it was not the object of the act to raise revenue. But the word "tonnage" is not used in the act nor in the scale of charges, as passed by the board, but the charge is made upon the "length over all." In my judgment, length bears no direct relation to tonnage. The terms are not synonymous, so that the letter, as well as the spirit, of the constitutional provision remain intact.

It is, therefore, adjudged and decreed that the plaintiff have judgment against the defendants in the sum of $5.90, with interest from the 10th day of March, 1882, and the costs of this action.

From this judgment the defendants appealed upon the ground that the tax, fee or charge demanded and sued for in the complaint, and for which judgment was rendered by his Honor, Judge Aldrich, is prohibited by section 10, Article I., constitution of the United States.

*Mr. J. P. K. Bryan,* for appellant.

*Mr. W. St. J. Jervey,* contra.

April 19th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. This was an action to recover the amount of certain port charges imposed upon the schooner "Marcus Edwards." by the plaintiff, by virtue of authority conferred upon said board by an act of the legislature of this State of December 24th, 1880, (17 *Stat.* 398,) as amended by act of December 20th, 1881, (17 *Stat.* 604.) This vessel was admitted to be an American vessel, owned by citizens of States of the United States other than the State of South Carolina, duly licensed for the coasting trade, and engaged in commerce and navigation between the several States of the United States. The fees or charges fixed by the board were to be " charged upon all vessels arriving at this port," [Charleston, South Carolina,] and the amount of such fees or charges was to be determined by "the length over all" of the vessel, according to a certain classification fixed by the board, the rate in the case under consideration being five cents " per foot of length over all."

It will be observed that the charge was to be exacted from "all vessels arriving at this port," and that there is no intimation that such charge was to be made as a compensation for any services rendered said vessel, but, on the contrary, it appears from the terms of the act that the said board was " invested with full power and authority to levy and collect from all vessels entering into and trading with the port of Charleston, such fees

and harbor or port charges, not inconsistent with law, as, in their discretion, may be necessary to pay the harbor master and port wardens for the services required of them, and to pay the necessary expenses attendant upon the execution of the duties devolved upon the said board under this act."

It is conceded that the "Marcus Edwards" did enter the port of Charleston, and that demand was duly made for the charges as fixed by the resolution of the board, which was not complied with, but there was no evidence that any service was rendered such vessel for which such charges were demanded as compensation. The appellants contend that the charges thus demanded of this vessel are expressly prohibited by certain provisions of the constitution of the United States. The clauses of the constitution relied upon are as follows: "Congress shall have power to regulate commerce with foreign nations and among the several States." *Art. I.,* § 8. "No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws. No State shall, without the consent of Congress, levy any duties on tonnage." *Art. I.,* § 10. So that the question for us to determine is whether such charges as this now under consideration are prohibited by these constitutional provisions.

This being a question arising under the constitution of the United States, it is proper that we should look to and be governed by the decisions of that tribunal which has been invested with final jurisdiction of such questions—the Supreme Court of the United States. That court has had before it, upon numerous occasions, questions similar to the one now under consideration, and we think that the principles upon which the decision of the question depends have been fully settled. In *Steamship Co.* v. *Port Wardens,* 6 *Wall.* 31, the constitutionality of a statute of Louisiana, which provided that the master and wardens of the port of New Orleans should be entitled to demand and receive, in addition to other fees, the sum of five dollars, whether called on to perform any service or not, from every vessel arriving in that port, was brought in question. The court held the statute to be in violation of the constitution of the United

States, as being not only a regulation of commerce, but, also, an attempt to impose a duty on tonnage.

Chase, C. J., in delivering the opinion of the court, used this language: "We think, also, that the tax imposed by the act of Louisiana is, in the fair sense of the word, a duty on tonnage. In the most obvious and general sense, it is true, these words describe a duty proportioned to the tonnage of the vessel; a certain rate on each ton. But, it seems plain that, taken in this restricted sense, the constitutional provision would not fully accomplish its intent. The general prohibition upon the States against levying duties on imports or exports would have been ineffectual if it had not been extended to duties on the ships, which serve as the vehicles of conveyance. This extension was doubtless intended by the prohibition of any duty of tonnage. It was not only a *pro rata* tax which was prohibited, but any duty on the ship, whether a fixed sum upon its whole tonnage, or a sum to be ascertained by comparing the amount of tonnage with the rate of duty."

From this view of the constitutional provision, we conclude that the proper construction is that it was designed to forbid the levying of any tax upon a vessel as such, whether the amount of such tax was to be ascertained by reference to the tonnage capacity of the vessel, or by any other mode of measurement. This case has been fully recognized in a number of subsequent cases. See *State Tonnage Tax Cases*, 12 *Wall.* 218; *Cannon* v. *New Orleans*, 20 *Id.* 581; *Inman Steamship Co.* v. *Tinker*, 94 *U. S.* 245; *Packet Co.* v. *Keokuk*, 95 *U. S.* 86. That it is wholly immaterial whether the amount of the tax is to be ascertained by reference to the tonnage of the vessel *eo nomine*, or in some other way, is fully shown by the fact that the Supreme Court of the United States has, in several cases, held that a charge imposed upon a vessel, even though measured by its tonnage *eo nomine*, is not in violation of the constitution of the United States where the charge is made as a compensation for services rendered such vessel; as, for example, a charge for the use of a wharf owned by a municipal corporation, even though the amount of such charge should, in express terms, be measured by the tonnage of the vessel, because that is a matter resting in contract, and is the

exercise of a mere property right, and not an exercise of sovereign authority. See *Cannon* v. *New Orleans, supra; Packet Co.* v. *Keokuk, supra; Packet Co.* v. *St. Louis,* 100 *U. S.* 423; *Vicksburg* v. *Tobin,* 100 *U. S.* 430; *Packet Co.* v *Catlettsburg,* 105 *U. S.* 559.

But where, as in the case of *Inman Steamship Co.* v. *Tinker,* 94 *U. S.* 238, the legislature of New York undertook to pass an act requiring all ships or vessels, with certain exceptions, entering the port of New York, or loading or unloading, or making fast to any wharf therein, to pay a certain percentage per ton, the act was held unconstitutional, not because the amount to be paid was to be measured by the tonnage of the vessel, but because the charge was exacted for simply entering the port, and not for any service rendered. As was said in the opinion of the court: "The name is immaterial; it is the substance we are to consider." And again: "The tax imposed is not merely a mode of measuring the compensation to be paid. The answer to this suggestion is that it is exacted where there is nothing to be paid for." In *Peete* v. *Morgan,* 19 *Wall.* 581, it was held that a State cannot, in order to defray the expenses of her quarantine regulations, impose a tonnage tax on vessels owned in foreign ports and entering her harbors in pursuit of commerce.

In *Alexander* v. *Railroad Company,* 3 *Strobh.* 594, recognized and approved in *State* v. *City Council of Charleston,* 4 *Rich.* 288, the Court of Errors of this State held that an ordinance of the city council of Charleston, providing that certain vessels arriving in the port of Charleston should pay to the harbor master one cent per ton, once in every three months, was a tonnage duty, and as such prohibited by the constitution of the United States. The court, manifestly, did not base its opinion upon the fact that the amount of the charge was to be measured by the tonnage of the vessel, for O'Neall, J., in delivering the opinion of the court, used this language: "But, it is said, the imposition of tonnage in this case is merely a mode by which the plaintiff is to ascertain his fees; and it is so called in the ordinance; 'the above fees,' is its language. I should think there would be great force in this view if it were so that the harbor master rendered any

service for the defendant.  *  *  *  For, in such a case, although the letter of the constitution might be violated, yet its true meaning would be untouched." This shows that Judge O'Neall took the same view which was subsequently adopted by the Supreme Court of the United States and acted upon in several cases above cited ; that where the charge is for service rendered it is wholly immaterial whether the amount of compensation is to be measured by the tonnage of the vessel *eo nomine,* or by any other mode of measurement, as courts look to the substance and not merely to the form of words. It is clear that the court in the Alexander case did not rest its conclusion upon the fact that the charge was imposed in express terms upon the tonnage of the vessel, but upon the fact that the charge was imposed, not for any service rendered, but simply for entering the port, and that it was a tax or duty and not merely a charge for compensation for services rendered. In the same case Judge O'Neall goes on to say : "The distinction between a tax or duty and fees or charges is, that the former is imposed by the sovereign authority without any regard to a corresponding and equivalent benefit or advantage; the latter proceed upon the *quid pro quo,* and unless service be rendered nothing is to be paid."

Looking at the case now before the court in the light of these authorities, we do not see how it is possible to resist the conclusion that the charge in question is a violation of the constitution of the United States. It was not a charge for any service rendered, for none was rendered, but, as said by Swayne, J., in *Packet Co.* v. *Keokuk, supra:* "It was a sovereign exaction, not a charge for compensation." It was imposed by the sovereign authority, acting through the agency delegated for that purpose, without any regard to a corresponding equivalent benefit or advantage, and it was, therefore, a tax or duty and not fees or charges. Every vessel, upon entering the port, was liable to pay such charges whether it received any service or not. Its manifest object was to provide the means of paying the officers of the State and the expenses incident to the performance of their duties, and cannot be regarded as anything more or less than as a tax to raise a revenue for that purpose; and we see no reason why, with just as much reason, the State might not

levy a similar contribution upon every vessel entering the port of Charleston, for the purpose of contributing to the means necessary to pay the police who are charged with the duty of preserving order on the wharves as well as in other parts of the city; and this no one would contend for.

If, as was held in *Peete* v. *Morgan, supra,* the State cannot impose such a tax for the purpose of defraying the expenses of her quarantine regulation—a matter in which all vessels entering a port are interested—it is not easy to perceive how the authority to impose such a tax for the purpose of defraying the expenses of its harbor commission could be sustained. The fact that the amount of the charge in the case now in hand was not to be ascertained by reference to the tonnage of the vessel, but was to be measured by another mode—" the length over all," which, it seems, is not one of the elements to be considered in calculating the tonnage of a vessel under the rule prescribed by section 4153, Revised Statutes of the United States—cannot, as we have seen, affect the question. To give the word of the constitution such a narrow and restricted sense would not fully accomplish its intent. As said by Mr. Chief Justice Chase, in *Steamship Co.* v. *Port Wardens, supra:* " It was not only a *pro rata* tax which was prohibited, but any duty on the ship, whether a fixed sum upon its whole tonnage, or a sum to be ascertained by comparing the amount of tonnage with the rate of duty;" or by any other mode of measurement, we may add, as a necessary consequence of the language quoted.

The judgment of this court is that the judgment of the Circuit Court be reversed.