### WAY v. NEW JERSEY STEAMBOAT CO.

(District Court, S. D. New York. November 4, 1904.)

1. COMMERCE—TONNAGE DUTIES—CONSTITUTIONALITY OF STATE STATUTE.
Laws N. Y. 1897, p. 701, c. 592, § 63, which provides that "the master, owner or consignee of every steamboat or vessel entering the port of Albany or loading, unloading or making fast to any wharf therein, shall, within forty-eight hours after the arrival thereof, pay to the harbor master for his services the sum of one and one-half cents per ton per annum, which shall be computed upon the registered tonnage of such steamboat or vessel," is void as imposing a tonnage tax, in violation of article 1, § 10, of the Constitution of the United States.

In Admiralty. Action by harbor master to recover statutory fees.

Hyland & Zabriskie, for libellant.

Wing, Putnam & Burlingham, for respondent.

ADAMS, District Judge. This action was brought by Edward P. Way, Harbor Master of the Port of Albany, N. Y., against the New Jersey Steamboat Company, owner of the steamboats Dean Richmond, Adirondack, C. W. Morse and the barge True American to recover double his statutory fees as provided for by chapter 592, p. 700, of the Laws of New York of 1897, which provides:

"§ 61. Powers and duties.—Such harbor master shall regulate and station all steamboats, vessels, wharves and piers within such port and remove such steamboats and vessels as are not employed in receiving and discharging their cargoes and prevent them from obstructing for an unreasonable time the passage or entrance into the basin of the city of Albany. He may determine how far and in what instances masters having charge of steamboats or vessels should accommodate each other in their respective situations, and may, if no one has charge of the same, remove any steamboat or vessel lying within such port, at the expense of the master or owner thereof. If any master or person having control of any vessel within the limits of such port shall neglect or refuse to obey the directions of such harbor master in any matters within his authority, or if any person shall resist or oppose him in the execution of his duties, he shall forfeit to the city of Albany the sum of fifty dollars for every such neglect or refusal or for any such resistance or opposition, and all money so collected shall be applied to the support of the poor of said city and county.

§ 63. Fees.—The master, owner or consignee of every steamboat or vessel entering the port of Albany or loading, unloading or making fast to any wharf therein, shall, within forty-eight hours after the arrival thereof, pay

to the harbor master for his services the sum of one and one-half cents per ton per annum, which shall be computed from the registered tonnage of such steamboat or vessel. If such fee is not paid within such time and after due demand, the master, owner or consignee, upon whom such demand is made, shall pay double the amount of such fees to be sued for and recovered, together with costs by the harbor master. The harbor master may employ assistance to collect such fees, and in case of his sickness, inability or absence, he may, by and with the assent of the mayor of the city of Albany, appoint some proper person to act in his stead and perform the duties of his office during such sickness, inability or absence. This section shall not apply to boats navigating the state canals which enter tide water for the purpose of being towed out of such port, unless receiving or discharging cargoes, or portions thereof, in tide water within the limits of such port, or unless navigating the canals of private companies or corporations."

## The libel alleges:

"Second:—That before and at the times hereinafter mentioned, your libellant was and is now the duly appointed Harbor Master for the Port of Albany in the State of New York as provided for by the laws of the State of New York, to-wit, Laws of 1897 (page 700), chapter 592, § 60, which Port comprehends within its limits all that portion of the Hudson River situate in front of the city of Albany, and extending northerly two miles above and southerly two miles below the boundaries of such city, together with all the wharves, slips and basins connected with such river within the above described tide water limits.

Third:—That the respondent is now and at the times hereinafter mentioned was a foreign corporation duly organized and existing under and by virtue of the Laws of the State of New Jersey having an office for the regular transaction of business in the Borough of Manhattan, New York City, N. Y., and was and is the owner as your libellant is informed and believes of the following vessels:

Steamboats Dean Richmond, Adirondack, C. W. Morse and the barge True American.

Fourth:—That said steamboats 'Dean Richmond,' 'Adirondack' and 'C. W. Morse' ply regularly during the summer season between the ports of Albany and New York in the State of New York and that said steamboats 'Dean Richmond' and 'Adirondack' frequently within the year 1903 and said steamboats 'Dean Richmond,' 'Adirondack' and 'C. W. Morse,' together with the said barge 'True American' frequently within the year 1904 entered the Port of Albany, N. Y., loading, unloading and making fast to a wharf or wharves therein.

Fifth:—That by section 61 of the statute above referred to the powers and duties of your libellant as such Harbor Master are defined and described as follows:

'Such Harbor Master shall regulate and station all steamboats, vessels, wharves and piers within such port and remove such steamboats and vessels as are not employed in receiving and discharging their cargoes and prevent them from obstructing for an unreasonable time the passage or entrance into the basin of the city of Albany. He may determine how far and in what instances masters having charge of steamboats or vessels should accommodate each other in their respective situations, and may, if no one has charge of the same, remove any steamboat or vessel lying within such port, at the expense of the master or owner thereof.'

Sixth:—That during the years 1903 and 1904 and up to the date hereof your libellant has exercised and performed all the powers and duties named in said statute above cited in the Port of Albany with reference to such steamboats, vessels, wharves and piers within such port.

Seventh:—That by section 63 of said act it is provided as follows:

'The master, owner or consignee of every steamboat or vessel entering the port of Albany or loading, unloading or making fast to any wharf therein, shall, within forty-eight hours after the arrival thereof, pay to the Harbor

Master for his services the sum of one and one-half cents per ton per annum, which shall be computed from the registered tonnage of such steamboat or vessel. If such fee is not paid within such time and after due demand, the master, owner or consignee, upon whom such demand is made, shall pay double the amount of such fees to be sued for and recovered, together with costs by the Harbor Master.'

And that by reason of the premises and of said act your libellant became and now is entitled to receive and collect from the respondent as its share, part or portion of the compensation for such services of your libellant, the sum of 1½ cents per ton per annum upon the registered tonnage of each of said steamboats or vessels.

Eighth:—That the registered tonnage of such vessels are as your libellant is informed and believes as follows:

Steamboat 'Dean Richmond' 2322; steamboat 'Adirondack' 2848; steamboat 'C. W. Morse' 2800; barge 'True American' 150, thus making the compensation to your libellant for such services as follows:

Season 1903:

| | | | | |
|---|---|---|---|---|
| For the steamboat | 'Dean Richmond' | | | $34.83 |
| " " " | 'Adirondack' | | | 42.72 |

Season 1904:

| | | | | |
|---|---|---|---|---|
| For the steamboat | 'Dean Richmond' | | | 34.83 |
| " " " | 'Adirondack' | | | 42.72 |
| " " " | 'C. W. Morse' | | | 42.00 |
| " " barge | 'True American' | | | 2.25 |

$199.35

Ninth:—That said respondent did not within 48 hours after the arrival of said vessels or any one of them, or at any other time, pay your libellant for his said services, the said sum or sums above named or any part thereof, and that prior to the commencement of this action payment of said sum of $199.35 was duly demanded on the part of the libellant from the respondent and by the latter refused, and that by reason of the premises the respondent became liable to pay double the amount of such fees, to wit, the sum of $398.70, which sum your libellant is now entitled to sue for and recover, together with the costs of this suit according to the statutes in such case made and provided and as above set forth.

Tenth:—That demands have been made upon the respondent on the part of your libellant, for said damages and claim, and payment thereof has been refused."

The respondent excepts to the libel upon the ground that it does not state facts sufficient to constitute a cause of action because this court is without jurisdiction in the premises. It urges that the Act is unconstitutional and that the libellant does not state a cause of action showing the maritime services necessary to invoke the powers of this court.

The contention in the first respect is that the law which is sought to be enforced is in contravention of article 1, § 10, of the Federal Constitution which provides:

"Art. 1, § 10. 'No State shall without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws, and the net produce of all duties and imposts laid by any State on imports or exports shall be for the use of the Treasury of the United States, and all such laws shall be subject to the revision and control of the Congress.'

'No State shall, without the consent of Congress, lay any duty of tonnage, keep troops or ships of war in time of peace, enter into any agreement or compact with another State or with a foreign power, or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay.' "

It is said that the law now under consideration is practically the same as a somewhat similar law relating to New York, which has been held to be unconstitutional on the ground that the tax was a tonnage duty. Inman Steamship Co. v. Tinker, 94 U. S. 238, 24 L. Ed. 118.

The law there held to be obnoxious to the constitution, was as follows:

"The following fees shall be collected under this act, and no others: All ships or vessels of the United States of one hundred tons burden or more, except lighters, tugs, barges, and canal-boats, sound and river steamboats employed on regular lines, and all ships or vessels that are permitted by the laws of the United States to enter on the same terms as vessels of the United States, which shall enter the said port of New York, or load or unload, or make fast to any wharf therein, shall pay one and one-half of one per cent per ton, to be computed from the tonnage expressed in the registers of enrolments of such ships or vessels respectively; all other foreign ships or vessels which shall arrive at and enter the same port, and load or unload, or make fast to any wharf therein, shall pay three cents per ton to be computed on the tonnage expressed in the registers or documents on board. Where difficulties arise between vessels of less than one hundred tons burden, and the captain of the port or a harbor-master shall be called upon to settle the same, the vessel, canal-boat, barge, or lighter in fault shall pay two dollars. Such fees shall be paid by the masters, owners, or consignees of such ships or vessels, at the office of the captain of the port, or to persons authorized by him to collect the same, within forty-eight hours after the arrival of such ship or vessel. In default of such payment, the same having been duly demanded, such masters, owners, or consignees, on whom such demand shall have been previously made, shall pay double the amount of such fees, to be sued for and recovered, in the name of the captain of said port, in any court having cognizance thereof. All fees under this act shall be paid to the captain of the port, or upon his written order; and he shall have power to employ the necessary assistance in making collections of the same, at an expense of not exceeding five per cent upon the amount collected, which expense shall not be considered as the ordinary expense of the office. The captain of the port shall have power to designate some harbor-master as his deputy, who may, during his absence, or in case of a vacancy in his office, perform all the duties belonging to the office of captain of the port; and the acts of said harbor-master so performed, shall be valid and binding."

The libellant here attempts to distinguish this case from the Inman-Tinker case on the ground that in the latter the act itself appeared on its face to make an unjust discrimination between different vessels and constituted a mere tax upon commerce, in the shape of a tonnage tax and further that the act now under consideration provided in terms that the fees charged against vessels should be for services rendered. The contention on behalf of the libellant is that the act was passed after the decision in the Tinker case and has the objectionable features of that act eliminated and that it is practically the same as the wharfage and pilotage laws which have been upheld as constitutional.

The law under consideration, though of 1897, is a re-enactment of a prior law apparently first passed in 1837 (Laws N. Y. 1837, p. 388, c. 356) and again in 1866 (Laws N. Y. 1866, p. 836, c. 374). It is said by the exceptant, with apparent truth, that no record of the enforcement of these laws appears in the courts, which is a fact of some significance.

The two laws seem to be practically the same in their salient features, and I find no such distinction as the libellant seeks to point out. There does not seem to be any substantial difference between this and the In-

man-Tinker case.    There it was said (pages 243, 244, 245, 94 U. S., 24 L. Ed. 118):

"Tonnage, in our law, is a vessel's 'internal cubical capacity in tons of one hundred cubic feet each, to be ascertained' in the manner prescribed by Congress.  Act of May 6, 1864, c. 83, 13 Stat. 70–72; Rev. St. U. S. p. 804, § 4153 [U. S. Comp. St. 1901, p. 2812].  'Tonnage duties are duties upon vessels in proportion to their capacity.'  Bouv. Law Dict. 'Tonnage.'

The term was formerly applied to merchandise.  Cowel, in his Law Dictionary, published in 1708, thus defines it: 'Tonnage (*tonnagium*) is a custom or impost paid to the king for merchandise carried out or brought in ships, or such like vessels, according to a certain rate upon every ton, and of this you may read in the statutes of 12 Edw. IV. c. 3; 6 Hen. VIII. c. 14', &c. The vital principle of such a tax or duty is that it is imposed, whatever the subject, solely according to the rule of weight, either as to the capacity to carry, or the actual weight of the thing itself.

In this law of the State there are several important points that must not be overlooked.  The charge is not exacted for any services rendered or offered to be rendered.  If the vessel enter the port and immediately take her departure, or load or unload, or make fast to any wharf, either of these things disjunctively brings her within the act, and makes her liable to the burden prescribed."

\*    \*    \*    \*    \*    \*    \*    \*

"The State, in passing this law imposing a tonnage duty, has exercised a power expressly prohibited to it by the Constitution.  In that particular the law is, therefore, void.  This view is sustained by the rulings of this court in the State Tonnage Tax Cases, 12 Wall. 204, 20 L. Ed. 370, and Cannon v. New Orleans, 20 Wall. 577, 22 L. Ed. 417.  See, also, Steamship Company v. Port Wardens, 6 Wall. 31, 18 L. Ed. 749, and Peete v. Morgan, 19 Wall. 581, 22 L. Ed. 201.

The tax imposed is not merely a mode of measuring the compensation to be paid.  The answer to this suggestion is, that it is exacted where there is nothing to be paid for, and has no reference to any circumstance in this connection but the tonnage of the vessel and the class to which it belongs."

The act provided for a vicious method of compensating a public officer.  After the determination of that question by the Supreme Court, the Legislature of New York provided for a salary to the officers cut off from fees by the Inman-Tinker decision.  A history of the subsequent legislation will be found described in Cole v. The State of New York, 102 N. Y. 48, 6 N. E. 277, by which it appears that a compensation allowed to such officers was approved by the Court of Appeals of New York as within the legislative powers.

I see no way of escaping from the conclusion that the act in question here should be deemed unconstitutional.

This obviates the necessity of considering the question of the jurisdiction of this court, urged by reason of the maritime nature of the services which are the subject of the action.

The exception is sustained and the libel dismissed, unless the libellant moves within ten days for an amendment.