## CLYDE MALLORY LINES v. ALABAMA EX REL. STATE DOCKS COMMISSION.

No. 43. Argued November 15, 1935.—Decided December 9, 1935.

*Mr. Roscoe H. Hupper,* with whom *Messrs. Alexis T. Gresham* and *William J. Dean* were on the brief, for appellant.

*Mr. S. Palmer Gaillard, Jr.,* for appellee.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on appeal under § 237 (a) of the Judicial Code, 28 U. S. C. 344 (a), from a judgment of the Supreme Court of Alabama, 229 Ala. 624; 159 So. 53, which affirmed a money judgment of the Circuit Court of Mobile County for the recovery of " harbor fees " from appellant.

Appellee, the State Docks Commission, is a state agency authorized to conduct " the operation of all harbors and seaports within the state " and to " adopt rules not inconsistent with the provisions of this Act for the purpose of regulating, controlling and conducting the said operation " and with power " to fix from time to time reasonable rates of charges for all services and for the use of all improvements and facilities provided under the authority

of this Act." No. 303, Alabama Acts of 1923, 330; No. 303, Ala. Acts of 1927, 1, 8, 12, 13.

By resolution of March 5, 1924, appellee adopted rules and regulations for the Port of Mobile, for the control, under the direction of a " chief wharfinger " or harbor master, of the movement, disposition and anchorage of vessels passing in and out of and using the port. By resolution of February 11, 1928, these rules were re-adopted and a new rule was added prohibiting the discharge of fuel oil into the harbor by vessels and manufacturing plants. The rules also established a schedule of " harbor fees," for mooring and shifting vessels in the harbor, and for all vessels of specified classes entering the harbor, including a fee of $7.50 for vessels " 500 tons and over." Appellants operate vessels of more than 500 tons in the coastwise trade between New York and Mobile, and the present suit was brought by appellee to recover fees incurred by reason of the call of appellant's vessels at Mobile.

The authority of appellee, under the laws and constitution of the state, to adopt the harbor rules and schedule of fees is not questioned, and the reasonableness of the $7.50 fee is conceded. But appellant insists that its imposition is prohibited by Art. I, § 10, Clause 3 of the Constitution, which provides that " no state shall, without the consent of Congress, lay any duty of tonnage," and that it is a burden on interstate commerce forbidden by the commerce clause.

The Supreme Court of Alabama found that the contested fee was a charge made for the policing of the harbor under the rules adopted by the appellee to insure the safety of vessels and the dispatch of shipping within the port, by regulating the speed of vessels, their movement and anchorage, and by providing for their protection from danger of fire occasioned by the uncontrolled discharge of oil into the harbor.

The record amply supports this conclusion. Appellee's resolution adopting the harbor fees declared that they were "for the purpose of meeting the expense attendant upon the supervision of the port and the execution of the regulations and providing for the proper accommodation of vessels at this port." The rules are plainly devised to insure the safety of vessels and to facilitate their use of the harbor. They regulate, within the harbor, the disposition of the rigging of sailing ships, the speed and mooring of vessels, the selection and change of their anchorage, their loading and unloading, and the use of lighters, barges and rafts. They require the arrival of all vessels at the port to be reported to the chief wharfinger, and charge him with "responsibility for selecting and changing anchorages of and for the movements of vessels into and out of slips or berths, and with all other ship movements that effect a fair joint use of the facilities of the port." The evidence shows that ship movements within the port are carried on under his active supervision and control.

The $7.50 fee is conceded not to be a charge for the use of the state docks or for mooring and shifting vessels, for which specific charges are levied. It is the only fee attributable to the general service rendered by the Commission in securing the benefits and protection of the rules to shipping in the harbor. We accept the conclusion of the state court that it is charged for a policing service rendered by the state in the aid of the safe and efficient use of its port, and we address ourselves to the question whether such a fee is forbidden by the Constitution either because it is a "duty of tonnage" or an unwarranted burden on interstate commerce.

1. It seems clear that the prohibition against the imposition of any duty of tonnage was due to the desire of the Framers to supplement Art. I, § 10, Clause 2, denying to the states power to lay duties on imports or exports,

see *Steamship Co.* v. *Portwardens,* 6 Wall. 31, 35; *Packet Co.* v. *Keokuk,* 95 U. S. 80, 87, 88, by forbidding a corresponding tax on the privilege of access by vessels to the ports of a state, and to their doubts whether the commerce clause would accomplish that purpose.[1] If the states had been left free to tax the privilege of access by vessels to their harbors the prohibition against duties on imports and exports could have been nullified by taxing the vessels transporting the merchandise. At the time of the adoption of the Constitution " tonnage " was a well understood commercial term signifying in America the internal cubic capacity of a vessel. See *Inman Steamship Co.* v. *Tinker,* 94 U. S. 238, 243. And duties of tonnage and duties on imports were known to commerce as levies upon the privilege of access by vessels or goods to the ports or to the territorial limits of a state and were distinct from fees or charges by authority of a state for services facilitating commerce, such as pilotage, towage, charges for loading and unloading cargoes, wharfage, storage and the like. See *Cooley* v. *Board of Wardens,* 12 How. 299, 314; *Inman Steamship Co.* v. *Tinker, supra,* 243.

Hence the prohibition against tonnage duties has been deemed to embrace all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the

---

[1] The adoption of the duty of tonnage clause followed a motion of Maryland delegates that " No state shall be restricted from laying duties of tonnage for the purpose of clearing harbors and erecting light houses." Despite the assertion that such works were peculiarly necessary in the Chesapeake, the convention proved hostile to state tonnage levies. There was uncertainty whether the commerce clause would forbid such duties: Gouverneur Morris said that it would not, Madison thought that it should, Sherman argued for a concurrent power over commerce with power in the United States to control state regulations. Whereupon the clause was added in its present form. See Madison's Notes of the Convention (for Sept. 15, 1787).

privilege of entering, trading in, or lying in a port, *Steamship Co.* v. *Portwardens, supra; State Tonnage Tax Cases,* 12 Wall. 204; *Cannon* v. *New Orleans,* 20 Wall. 577; *Inman Steamship Co.* v. *Tinker, supra;* and see *Huse* v. *Glover,* 119 U. S. 543, 549, 550. But it does not extend to charges made by state authority, even though graduated according to tonnage, for services rendered to and enjoyed by the vessel, such as pilotage, *Cooley* v. *Board of Wardens, supra,* or wharfage, *Packet Co.* v. *Keokuk, supra; Packet Co.* v. *St. Louis,* 100 U. S. 423; *Packet Co.* v. *Catlettsburg,* 105 U. S. 559; *Transportation Co.* v. *Parkersburg,* 107 U. S. 691; *Ouachita River Packet Co.* v. *Aiken,* 121 U. S. 444; or charges for the use of locks on a navigable river, *Huse* v. *Glover, supra,* or fees for medical inspection, *Morgan's Steamship Co.* v. *Board of Health,* 118 U. S. 455.

Appellant places its reliance on those cases in which a tax, levied in the guise of wharfage or a charge for medical inspection, was condemned because imposed on all vessels entering a port, whether receiving the benefit of the service or not, see *Steamship Co.* v. *Portwardens, supra; Cannon* v. *New Orleans, supra; Peete* v. *Morgan,* 19 Wall. 581. It argues that the present fees must similarly be condemned because imposed on all vessels entering the port, and points out that appellant has neither asked nor received any police service such as that which the state court regarded as the basis for the charge.

But the policing of a harbor so as to insure the safety and facility of movement of vessels using it differs from wharfage or other services which benefit only the particular vessels using them. It is not any the less a service beneficial to appellant because its vessels have not been given any special assistance. The benefits which flow from the enforcement of regulations, such as the present, to protect and facilitate traffic in a busy harbor inure to all who enter it. Upon this ground, among others, a

fee for half pilotage imposed upon vessels such as were not required to take a pilot was upheld in *Cooley* v. *Board of Wardens, supra,* 312, 313. We conclude that a reasonable charge for a service such as the present is neither within the historic meaning of the phrase " duty of tonnage " nor the purpose of the constitutional prohibition.

It is unnecessary to consider other types of port charges, as for dredging or other forms of harbor improvement, with respect to which different considerations may apply.

2. The present fee to defray the cost of a purely local regulation of harbor traffic is not an objectionable burden on commerce. State regulations of harbor traffic, although they incidentally affect commerce, interstate or foreign, are of local concern. So long as they do not impede the free flow of commerce and are not made the subject of regulation by Congress they are not forbidden. *Willson* v. *Black-Bird Creek Marsh Co.,* 2 Pet. 245; *Gibbons* v. *Ogden,* 9 Wheat. 1, 209; *Cooley* v. *Board of Wardens, supra,* 314; *Gilman* v. *Philadelphia,* 3 Wall. 713; *Pound* v. *Turck,* 95 U. S. 459; *Escanaba Co.* v. *Chicago,* 107 U. S. 678; *Cardwell* v. *American Bridge Co.,* 113 U. S. 205; *Willamette Bridge Co.* v. *Hatch,* 125 U. S. 1; *Lake Shore & M. S. Ry. Co.* v. *Ohio,* 165 U. S. 365; *Cummings* v. *Chicago,* 188 U. S. 410; *Manigault* v. *Springs,* 199 U. S. 473; see *Brown* v. *Houston,* 114 U. S. 622, 631; *Minnesota Rate Cases,* 230 U. S. 352, 363, 407. And charges levied by state authority to defray the cost of regulation or of facilities afforded in aid of interstate or foreign commerce have consistently been held to be permissible. Such charges were considered and upheld in *Packet Co.* v. *Keokuk, supra; Morgan's Steamship Co.* v. *Board of Health, supra; Transportation Co.* v. *Parkersburg, supra,* 701, *et seq.; Ouachita Packet Co.* v. *Aiken, supra,* 448, *et seq.; Huse* v. *Glover, supra.* See *Sands* v. *Manistee River Improvement Co.,* 123 U. S. 288. A similar exercise of state power is the imposition of in-

268

spection or license fees incident to or in support of local regulations of interstate commerce. *Patapsco Guano Co. v. Board of Agriculture,* 171 U. S. 345; *McLean & Co. v. Denver & Rio Grande R. Co.,* 203 U. S. 38, 54; *Red " C " Oil Mfg. Co. v. Board of Agriculture,* 222 U. S. 380; *Savage v. Jones,* 225 U. S. 501; *Merchants Exchange v. Missouri,* 248 U. S. 365; *Pure Oil Co. v. Minnesota,* 248 U. S. 158. Its most recent manifestation is the levy of a tax which represents a reasonable charge upon interstate automobile traffic passing over state highways, upheld in *Kane v. New Jersey,* 242 U. S. 160; *Clark v. Poor,* 274 U. S. 554; *Interstate Busses Corp. v. Blodgett,* 276 U. S. 245; *Hendrick v. Maryland,* 235 U. S. 610.

*Affirmed.*