(No. 25875.-

Charles Clements, Appellee, *vs.* Edward J. Hughes, Secretary of State, Appellant.

*Opinion filed December 16, 1940.*

JOHN E. CASSIDY, Attorney General, (JOHN B. HARRIS, of counsel,) for appellant.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, and CHARLES G. BRIGGLE, JR., (HENRY S. MOSER, and JACK I. LEVY, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here to review the judgment of the circuit court of Sangamon county holding invalid section 4(b) of the Uniform Motor Vehicle Anti-Theft act as that section was amended in 1939. Ill. Rev. Stat. 1939, chap. 95½, par. 77(b).

Appellee, a resident of Illinois, purchased a new automobile from an Indiana corporation at Hammond, Indiana, immediately bringing it to his home in Illinois. Within twenty-four hours after the purchase he made application for registration of this automobile and a certificate of title thereto. In his applications he stated that a certificate of title to said motor car had been issued by the Treasurer of

the State of Indiana to the company selling the car to the petitioner and by that company assigned to the petitioner. He also tendered the fee for certificate of registration and certificate of title.

Relying on section 4(b) here involved, the Secretary of State refused to issue to appellee a certificate of registration or of title unless he paid a fee of $25 in addition to the fee he tendered. This $25 fee is fixed by section 4(b) as a fee to pay for investigation of title by the Secretary of State. Appellee brings this action under section 9(b) of the act to review the action of the Secretary of State. As we have seen, the circuit court held section 4(b) of the act unconstitutional and entered an order reversing the decision of the Secretary of State, who has appealed.

The grounds upon which appellee contested the validity of section 4(b) are that it has no relation to the purpose expressed in its title, prescribes unreasonable and discriminatory classifications, denies equal protection of the law, deprives plaintiff of due process of law and constitutes a burden on interstate commerce in that it levies an impost or duty on new motor vehicles purchased in States other than Illinois by an Illinois resident. It is also complained that the actual cost of the investigation provided for does not exceed 25 cents on the average, and that the charge of $25 is so excessive as to take the act out of the realm of regulation and to make of it a revenue statute.

The act here under consideration is styled the "Uniform Motor Vehicle Anti-Theft act." Its objects are stated to be, "an act in relation to the prevention of the theft of motor vehicles by requiring certificates of title," etc. After provision for the registration of motor vehicles and for application for certificate of title, the act, in paragraph (b) of section 4, after requiring a certificate of title in the case of the purchase of a new car and providing the method of applying therefor, and the proof necessary to secure such

certificate, when purchased within the State or in a State having a registration law, further provides that if the applicant is a resident of this State and has not secured a certificate of title in such other State, or legally recorded the purchase of the motor vehicle or registered the same in such other State, or if he has so secured such a certificate of title or recording but has not owned the motor vehicle under such certificate, recordation or registration for at least ninety days prior to his application for a certificate of title in this State, he is required to pay the sum of $25 to the Secretary of State who, thereupon, is to cause an investigation to be made "to determine whether the applicant is the owner of the motor vehicle." This section further provides that if an Illinois resident has purchased a motor vehicle outside the State, because of a breakdown or other emergency, the repair or replacement of which would equal one-third the value of the motor vehicle so purchased in the other State, when the same is shown by affidavit accompanying the application for certificate in this State, the Secretary of State may issue the certificate without the investigation fee. The act also provides that if the applicant for certificate of title was, at the time he purchased the car in another State, a legal resident therein, but since, such purchaser has become a resident of this State, a certificate of title may be issued to him without the investigation charge.

By stipulation of the parties as to facts and evidence offered by the plaintiff, it appears that during the six months following July 1, 1939, when the act went into effect, approximately 3300 automobiles of "current model" purchased outside of Illinois, were registered in the Secretary of State's office, and of these the $25 fee provided by the statute was paid on approximately 803. Three additional persons were added to the defendant's clerical staff by reason of the act, at a salary cost to the State of $375 per month. The total revenue derived in that time

approximated $21,000. The cost of administering the act for that period included $7000 for a publication and mailing of notices to local dealers familiarizing them with the provisions of the statute, and $1000 for discarding and reprinting outmoded application forms. Above these two items the expense of the administration of the act amounted to $4500. In seventy-five per cent of the cases where payment of $25 fee was demanded, the investigation consisted of writing a form type of letter, sometimes followed with a telegram, or, in about twenty-five per cent of those cases, a telephone call.

Plaintiff also showed that during the calendar year 1938, out of a total of 3650 automobile thefts reported to the stolen auto detail of the Chicago police department, 362, or about ten per cent, involved automobiles of the 1938 model, and that, during the first six months of 1939, according to such reports, out of a total of 1667 automobile thefts so reported, 180, or less than eleven per cent of the automobiles involved, were 1939 models. There is no evidence as to such percentages in other parts of the State.

We will consider first the objection that this statute places a forbidden burden on interstate commerce and discriminates against it. To justify the exaction by a State of a tax which burdens interstate commerce, it must affirmatively appear that it is demanded as a reimbursement for the expense of providing facilities or to enforce regulations which are within its constitutional powers. *Clyde Mallory Lines* v. *State of Alabama,* 296 U. S. 261, 80 L. ed. 215; *Interstate Transit, Inc.* v. *Lindsey,* 283 id. 183, 75 L. ed. 953; *Sprout* v. *South Bend, 277* id. 163, 72 L. ed. 833.

In determining whether a tax act is an unwarranted and, therefore, illegal burden upon interstate commerce, recourse is had to the taxing statute. (*Morf* v. *Bingaman, 298* U. S. 407, 80 L. ed. 1245; *Clark* v. *Poor, 274* id. 554, 71 L. ed. 1199.) It may appear also, from the

use of funds collected to defray such expense, whether the tax is an unwarranted burden on interstate commerce. (*Aero Mayflower Transit Co.* v. *Georgia Public Service Com.* 295 U. S. 284, 79 L. ed. 1439; *Hicklin* v. *Coney,* 290 id. 169, 78 L. ed. 247.) On complaint of an excessive fee, the burden is on the complainant to show that it is excessive for the declared purpose and is arbitarary and unreasonable. *Morf* v. *Bingaman, supra; Interstate Buses Corp.* v. *Blodgett,* 276 U. S. 245, 72 L. ed. 551.

In the act before us it is provided that the fee exacted be paid into the State treasury. It does not appear that the fee paid is to be used to pay the cost of investigation. Appellant's expenditures in making investigations are paid out of the State treasury as a part of the general expense of the office. Nothing in the act indicates that the fees shall be segregated as a fund and used to pay the expense of investigation. They become, when paid in to the treasury, a part of the State's general fund and subject to appropriation for any legitimate purpose.

Counsel for appellant, in support of their contention that the act is not an unwarranted burden on interstate commerce, cite *Clark* v. *Paul Gray, Inc.* 306 U. S. 583, 83 L. ed. 1001. In that case the State of California passed what was known as a "Caravan" act, exacting a fee of $15 for each automobile driven into the State in caravan, for sale. This fee was divided into two fees of $7.50 each. Each was specifically declared to be a license fee, for a period of six months, and to be in lieu of all other fees, for permitting the caravaning of vehicles on the highways of the State. One of the fees of $7.50 was declared to be for the purpose of reimbursing the State for expense incurred in administering police regulations pertaining to the operation of vehicles moving in caravan form pursuant to such permits, and the other was as compensation for the privilege of so using the highway. In that case it was held that there was ample support for

legislative imposition of those fees because of the peculiar character of caravan traffic which involved a special type of use of the highway, increasing wear and augmenting hazards to traffic, thus imposing on the State a heavier financial burden, and that, as such, it was not so disproportionate as to amount to an unwarranted burden on interstate commerce. The opinion notes that it is no longer doubted that States have constitutional authority to exact reasonable fees for the use of their highways by vehicles moving interstate, and that, as the classification of traffic for the purpose of regulation and fixing fees thereon is a legislative and not a judicial function, the determination of the legislature is presumed to be supported by facts shown to it, unless facts judicially known or proved preclude the possibility. On those grounds the California act was sustained.

That case, however, is not of assistance here, since the grounds upon which the opinion was based do not appear here. In the act before us the Secretary of State is generally required to issue, without investigation, a certificate of title and registration to the applicant in cases where the application is accompanied by a bill of sale or assignment of former certificate of title showing the motor vehicle to be in the ownership of the applicant. It is only where an Illinois resident is an applicant to register a certificate of title on a motor vehicle purchased out of the State, and which he has not owned for a period of ninety days or more, that the applicant is required, under this act, to pay the fee of $25 for investigation as to his title. These are not fees charged for the use or privilege of using the highway by interstate traffic or for policing such traffic. The purpose of general registration is to give to a resident the privilege of using the highways in his State. No investigation is made of the title to motor vehicles purchased within the State, or if purchased without the State more than ninety days prior to making the application. Thus, it

appears that the act bears no relation to regulation of use of the highway nor to the regulation of traffic. Does it come within other powers of regulation over interstate traffic vested in the State?

That the effect of this act is to give Illinois dealers of motor vehicles an advantage over those in other States, so far as purchases by Illinois residents are concerned, seems clear. The purpose stated in the title to the act, and argued by counsel for appellant, is to protect Illinois residents against sale to them of stolen cars. But the question arises whether, under this act, the public is protected from theft by investigating the title secured by the Illinois purchaser who buys a new car out of the State and offers it for registration here. The transaction is completed. Whatever title he has has passed to him. If the Illinois purchaser has been dealing with a thief, he gets no protection from the investigation of his title. Does it have a tendency to deter the thief? This seems hardly probable since he is already voluntarily operating in violation of law, and if he secretes the motor vehicle for ninety days he is not within the act. The statute limits the investigation fee to cases of the purchase of new cars. If it were shown that it was easier to traffic in stolen new cars brought into the State than in new cars stolen here, such might form a basis of an argument that this tax was not an unwarranted burden on interstate commerce. The facts of this record are, however, that only about ten per cent of the thefts of what, in the record, are called "current model" cars, regardless of their origin as stolen property, have occurred in the city of Chicago in two years.

Certificates of title to all used cars purchased within or without the State, and to all new cars purchased within the State are issued without investigation. In this case the application submitted by appellee was accompanied by a certificate of title issued by the Treasurer of the State of Indiana to appellee's vendor and by it assigned to him.

It does not appear from the record in this case, nor does it appear, from reading the statute, to have been the legislative thought that new cars purchased outside this State and brought in within ninety days after that purchase, are more subject to theft than new or used cars purchased within the State. In fact, as we have seen, the record indicates that a large percentage of the cars that are stolen are used cars, regardless of the place of their original purchase.

Neither argument of counsel for defendant, nor the record, afford a reason resting in local conditions for what appears to be a discrimination in the matter of registration fees as between imported and domestic new cars. While circumstances may so negative an apparent discrimination as to show that such fees are not, in fact, an unwarranted burden on interstate commerce, yet no such circumstances appear in this case. It affirmatively appears, moreover, that the fee charged is out of proportion to the cost of investigation.

While a State may exercise its police power to guard against fraud, it must be exercised in such a way as to avoid unjust discrimination against articles brought into the State in interstate commerce. As was suggested in *McLain Inc.* v. *Hoey*, 19 Fed. Sup. 990, if it is thought that the sale of articles of the type of merchandise affected, furnishes peculiar opportunities for fraud when brought in by interstate commerce, it should be remembered that Congress and not the State legislature is the instrumentality upon whom the people have placed the power of regulating such commerce.

The cases cited by appellant are to be distinguished on the facts from this case. Applying the rule laid down in cases herein cited, that to justify the exaction by a State of fees which burden interstate commerce, it must affirmatively appear that it is demanded as reimbursement for the expense of providing facilities or of enforcing regula-

tions of that commerce which are within its constitutional powers, it seems clear to us that the fee provided in this act does not meet the requirements of that rule and that it is, therefore, a discrimination against and an unwarranted burden upon interstate commerce. As this renders the act invalid, it becomes unnecessary to consider other grounds of objection to it.

The circuit court was right in holding the act unconstitutional, and its judgment is affirmed.

*Judgment affirmed.*