USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1536 LCM ENTERPRISES, INC. AND ROBERT R. CAPOBIANCO, Plaintiffs-Appellants, v. TOWN OF DARTMOUTH, ET AL., Defendants-Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Rosenn,* Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Luigi R. Petruzziello, with whom F. Joseph Gentili and _______________________ ___________________ Capobianco & Gentili, P.C., were on brief for appellants. __________________________ John A. Birknes, Jr. for appellees. ____________________ ____________________ January 28, 1994 ____________________ ____________________ * Of the Third Circuit, sitting by designation. TORRUELLA, Circuit Judge. This case presents the _____________ question of whether a town's disparate harbor usage fees between residents and nonresidents violates the Fourteenth Amendment of the Constitution. Plaintiffs-appellants, LCM Enterprises, Inc. ("LCM") and Robert Capobianco,1 brought this action against the town of Dartmouth, Massachusetts, its Board of Selectmen, and its Waterways Advisory Committee in the United States District Court for the District of Massachusetts. Appellants challenge the constitutionality of Dartmouth's usage fees which are assessed on boats that the appellants keep moored in the town's harbor. As nonresidents, appellants must pay a higher fee than residents with similarly sized boats. Although the Constitution does place limits on a town's ability to tax users of America's waterways, we find that the actions taken by Dartmouth in this case do not implicate such limits. We consequently affirm the district court's order granting summary judgment in favor of the defendants-appellees. I. BACKGROUND BACKGROUND On May 7, 1991, the municipality of Dartmouth, Massachusetts established a Waterways Management Enterprise Fund (the "waterways fund" or "fund"), pursuant to Massachusetts General Laws, Chapter 44, Section 53F1/2 (1990),2 to support ____________________ 1 Capobianco is the president and treasurer of LCM which was created to hold ownership of one of Capobianco's boats. 2 Mass. Gen. L. ch. 44, 53F1/2 (1990) authorizes a town to establish an "enterprise fund" for a "utility, health care, recreational or transportation facility, and its operation." -2- water related infrastructure. The fund is financed by a waterways use fee (the "use fee") which is levied by the town upon all boat owners who use the waterways of Dartmouth for more than limited periods of time. The amount of the fee is determined in accordance with the following use fee schedule: (1) For residents of Dartmouth: (a) $20 for boats 12 to 16 feet in length; (b) $35 for boats 17 to 30 feet in length; (c) $35 for the first 30 feet plus $1 per each additional foot for boats greater than 30 feet in length. (2) For nonresidents of Dartmouth: (a) $50 for boats 12 to 16 feet in length; (b) $100 for boats 17 to 30 feet in length; (c) $100 for the first 30 feet plus $1.50 per each additional foot for boats greater than 30 feet in length. A resident is defined as one or more of the following: A voter registered in the Town. A person who is domiciled in the Town. A person who pays real estate taxes to the Town. A spouse or dependant of any of the above. Dartmouth, Mass., Amendment to Dartmouth General By-Laws Article IV, Section 19B, Sub-Section 25 (May 7, 1991). Appellants are both nonresidents of Dartmouth according to the town's definition of residency. Appellant LCM owns a fifty foot boat and appellant Capobianco owns a fifteen foot boat. Both boats are habitually moored or docked in Dartmouth. LCM and Capobianco must pay use fees of $130 and $50 respectively. Residents with similar sized boats would have to -3- pay fees of $55 and $20 respectively. Appellants also pay an excise tax to Dartmouth pursuant to Massachusetts General Laws Chapter 60B "for the privilege of using the waterways of the Commonwealth [of Massachusetts]." Mass. Gen. L. ch. 60B, 2(a). The Commonwealth imposes the tax but directs cities and towns to collect the tax and use it for waterway maintenance. All boat owners pay the excise tax according to the same formula regardless of their place of residence. In addition, the appellants claim that they pay $2,450 in slip rental fees to the New Bedford Yacht Club which, they point out, pays real estate taxes to Dartmouth. Dartmouth places the money it collects from the disputed use fee, along with other revenues from boating and shellfish licenses and permits, in the waterways fund. Dartmouth also deposits 50% of the Massachusetts excise taxes on boats that it collects into the fund. The other 50% of the excise tax revenue is placed into the town's general fund. According to affidavits provided by town officials, Dartmouth collected a total of $118,042 in revenues for the waterways fund for fiscal year 1992 including $58,874 in Usage Fees and $28,122 in excise taxes.3 ____________________ 3 The set of figures used in this opinion are "actual" figures according to Dartmouth's affidavits. The town also submitted "budgeted" or "estimated" figures that differ slightly, but not significantly, from the "actual" ones. We use the actual figures, as did the district court, because they provide more complete information. The use of the estimated figures instead of the actual ones, however, would have no effect whatsoever on our analysis or our decision. -4- The same Dartmouth affidavits reveal that the town spent $111,276 in fiscal year 1992 on port related services such as waterway maintenance, capital improvements and operating expenses plus an additional $17,217 for overhead costs attributable to town administration expenses. These expenses were paid for entirely out of the waterways fund and consumed all fund revenues for fiscal year 1992. According to town officials, the town also spent $127,888.23 on municipal services provided to the waterfront and harbor including police, fire, sanitation, and other such services. Dartmouth paid for these costs out of its general fund which depends on the town's general tax levy, namely real estate taxes and fire district taxes, for its revenues. Dartmouth also presented evidence showing that its harbor related expenses were increasing significantly every year. In November of 1991, appellants filed suit against Dartmouth contending that the facial disparity in the assessment and collection of the use fee constituted impermissible discrimination under the Commerce Clause, the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. Both sides moved for summary judgment and, initially, both agreed that no genuine issues of material fact existed in the case. After a hearing on the motions, however, appellants submitted a supplemental memorandum in which they challenged some of the factual assertions contained in the appellees' affidavits. The district court then granted summary judgment in favor of Dartmouth and the other appellees. The court found that -5- appellants lacked standing to raise a Commerce Clause challenge because they used their boats only for recreational purposes and did not engage in any commercial activity that would be affected by the use fee. In ruling on the Fourteenth Amendment claims, the district court found that Dartmouth's actions did not burden a fundamental right nor invoke a suspect classification; consequently, the fee scheme need only be rationally related to a legitimate purpose in order to pass Constitutional scrutiny. The district court granted summary judgment because it found Dartmouth's fee structure was rationally related to the legitimate goal of equitably distributing the growing costs of waterway maintenance between residents and nonresidents. Noting that Dartmouth had to use money from its general fund to cover the shortfall between total costs attributable to the harbor and total revenues from the waterways fund, the district court found that the disparate fee structure was rationally related to the goal of equalizing the burdens between residents, who pay real estate and fire district taxes to the general fund, and nonresidents, who contribute little to the general fund. On appeal, appellants challenge the Equal Protection and Due Process rulings and the trial court's implicit conclusion that there are no disputed issues of material fact to justify summary judgment. Appellants also raise related claims based on the theory that Dartmouth's fee is an impermissible regulation of the waterways. After reviewing the record in the light most favorable to the appellants for any genuine issue of a material -6- fact that would preclude summary judgment, Fed. R. Civ. P. 56(c); Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990), we find that ______________ the district court was correct in holding that Dartmouth and the other appellees were entitled to a judgment in their favor as a matter of law. II. EQUAL PROTECTION AND DUE PROCESS EQUAL PROTECTION AND DUE PROCESS When a state, or a political subdivision thereof, distinguishes between two similarly situated groups, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. Such scrutiny is normally of the rational basis variety unless the distinction involves a suspect classification or burdens a fundamental right. Nordlinger v. Hahn, 112 S. Ct. 2326, 2331-32 (1992); Friedman v. __________ ____ ________ Rogers, 440 U.S. 1, 17 (1979) (citing New Orleans v. Dukes 427 ______ ___________ _____ U.S. 297, 303 (1976)); Campos v. I.N.S., 961 F.2d 309, 316 (1st ______ ______ Cir. 1992). In judging the constitutionality of Dartmouth's use fee, the district court applied the rational basis standard of scrutiny because the fee did not penalize the right to travel,4 or any other fundamental right, and it did not invoke a suspect classification. See Hawaii Boating Ass'n v. Water Transp. ___ ______________________ ______________ Facilities Div., Dept. of Transp., 651 F.2d 661, 664-66 (9th Cir. _________________________________ 1981). For the same reasons, the district court appropriately ____________________ 4 The fundamental right to travel is not burdened in this case because boaters who pass through the town or moor their boats in the harbor for only short periods of time are not subject to the use fee. -7- applied the rational basis level of scrutiny to assess appellants' Due Process claim as well. See Baker v. Concord, 916 ___ _____ _______ F.2d 744, 755 (1st Cir. 1990); In Re Wood, 866 F.2d 1367, 1371 ___________ (11th Cir. 1989). On appeal, appellants fail to point out any error in the judge's finding that no fundamental right or suspect classification is implicated in this case. Thus, to the extent they challenge the level of scrutiny applied to Dartmouth's use fee,5 we invoke "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. ______________ Innamorati, 996 F.2d 456, 468 (1st Cir. 1993) (quoting United __________ ______ States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 ______ _______ ____ ______ U.S. 1082 (1990)). Under rational basis scrutiny, a classification will withstand a constitutional challenge as long as it is rationally related to a legitimate state interest and is neither arbitrary, unreasonable nor irrational. City of Cleburne v. Cleburne Living ________________ _______________ Ctr., Inc., 473 U.S. 432, 440 (1985); Baker, 916 F.2d at 747. __________ _____ Courts applying the rational basis standard must give considerable deference to legislative policy determinations and refrain from setting aside a statutory discrimination if "any state of facts reasonably may be conceived to justify it." Bowen _____ ____________________ 5 Appellants only statement that a higher level of scrutiny is appropriate in this case is the mere assertion that "courts will subject classifications infringing on fundamental rights or inherently suspect characteristic to a higher degree of scrutiny." They provide no explanation, however, as to why this standard should be applied to the present case. -8- v. Gilliard, 483 US 587, 600-01 (1987) (quoting Dandridge v. ________ _________ Williams, 397 U.S. 471, 485 (1970)); accord, Nordlinger, 112 S. ________ ______ __________ Ct. at 2332; Friedman v. Rogers, 440 U.S. at 17. ________ ______ Dartmouth argued, and the district court found, that the disparate structure of the use fee is rationally related to the goal of "fairly distributing harbor costs to all users" and thus equalizing the otherwise disproportionate burdens between residents and nonresidents of maintaining the harbor. Appellants claim that no such disproportionate burdens are imposed on residents and that nonresidents do pay an equal share of harbor costs absent the disparate usage fees.6 Appellants attempt to distinguish the instant case from two cases that upheld disparate usage fees between residents and nonresidents, Baldwin v. Fish _______ ____ ____________________ 6 Appellants briefly raise an additional argument that the use fee is really an excise tax which, they claim, renders the discriminatory structure of the fee violative of the Equal Protection Clause. Appellants cite Metropolitan Life Ins. Co. v. __________________________ Ward, 470 U.S. 869 (1985), for the proposition that disparate ____ excise taxes between residents and nonresidents violate the Constitution. Without delving into the issue of whether the use fee is really a fee or a tax, it is sufficient for our purposes to note that Metropolitan Life held that using a discriminatory tax to __________________ encourage the formation of domestic companies at the expense of foreign companies was not a legitimate purpose under the Equal Protection Clause. Id. at 876-83. That holding does not apply __ to the present case because, unlike the tax at issue in Metropolitan Life, the aim of Dartmouth's use fee is to equalize _________________ disproportionate burdens, not to favor locals at the expense of nonresidents. It is also significant that Dartmouth applies all of the revenues it receives from the usage fee for nonresident boaters to the maintenance of waterways utilized by those boaters and not to Dartmouth's general fund. -9- and Game Comm'n, 436 U.S. 371, 388-91 (1978),7 and Hawaii _________________ ______ Boating, 651 F.2d at 666,8 on the grounds that the nonresidents _______ in those cases did not contribute financially to the state other than through the challenged fees. In this case, appellants argue that nonresidents, such as themselves, do contribute to the town's general fund by paying the state excise tax on boats (50% of which goes to the Dartmouth's general fund) and by paying $2,450 in slip rental fees to a yacht club that pays real estate taxes. They conclude that, because resident and nonresident boaters shoulder all the costs equally, Dartmouth is really seeking to impose greater burdens on nonresidents in order to lessen the burdens on residents, a policy that purportedly bears no rational relationship to any legitimate state interest. Appellants' challenge of the use fee essentially boils down to an attack on the reasonableness of Dartmouth's assessment of its own harbor related revenues and expenses. As a result, they undertake the very difficult burden of showing that a government's financial planning, calculation and analysis is ____________________ 7 The Supreme Court in Baldwin upheld a Montana statute that _______ imposed on nonresidents much higher fees for certain hunting licenses than it imposed on residents because the "legislative choice was an economic means not unreasonably related to the preservation of a finite resource and a substantial regulatory interest of the State." Baldwin, 436 U.S. at 390. _______ 8 In Hawaii Boating, the Ninth Circuit upheld a state statute ______________ that assessed higher moorage fees to nonresidents than to residents because the disparate rates were rationally related to the "valid legislative goal" of "equalizing costs attendant to maintaining and constructing small boat harbors . . . ." Hawaii ______ Boating, 651 F.2d at 666. As the district court correctly noted, _______ the usage fee upheld in that case is quite similar to the fee challenged in the instant case. -10- unreasonable to the point of irrationality. See generally ______________ Nordlinger, 112 S. Ct. at 2332 (noting that states have "large __________ leeway" in creating distinctions in their tax laws); Baldwin, 436 _______ U.S. at 390-91 (finding no need for state to precisely justify the cost differential between hunting license fees charged to residents and nonresidents); Baker, 916 F.2d at 747-48 (finding _____ the use of classifications that lack "mathematical nicety" and contain other imperfections does not violate the Equal Protection Clause). Appellants cannot sustain this burden if the record evidences any reasonable basis for Dartmouth to believe that there was a disparity in waterways contributions between residents and nonresidents.9 The record clearly shows that such a basis exists. Dartmouth spends all of the money from its waterways fund, consisting of $118,042 in resident and nonresident contributions, on waterways related expenses. The town must then spend an additional $127,888.23 for municipal services provided to the harbor.10 Unlike the waterways fund, this money comes ____________________ 9 The Fourteenth Amendment also requires that Dartmouth's disparate fee structure not be unreasonably disproportionate to the size of the disparity it purports to correct. This issue is not before us, however, because appellants have not raised it on appeal. Furthermore, the additional fees charged to nonresidents do not exceed the $127,888.23 shortfall which the residents must make up. 10 The appellants argue that the district court erred in granting summary judgment because a genuine issue of material fact existed with regard to the alleged "shortfall" between the revenues collected from waterways related levies and the expenses attributable to the waterways. In its supplemental memorandum to the district court, appellants disputed the $127,888.23 figure provided by the town because it included several items that, -11- primarily from residents through real estate and fire district taxes. There is thus a disproportionate burden on residents for harbor expenses even after the disparate fees are imposed. _______________________________________________ Clearly, Dartmouth's attempt to make up some of this disparity through a disparate fee structure passes constitutional muster. Appellants argue that they contribute equally to the town's general fund even though they do not pay real estate or fire district taxes.11 They point first to their payment of ____________________ allegedly, do not belong on the list. The challenged items include the cost of grading the town landing ($1,065.19), the cost of certain police services ($24,451.00), and several unspecified expenses involving town services that supposedly receive state or federal funding. Appellants' objections do not raise any disputed issue of material fact because the objections do not deny that some shortfall exists. Were the court to take all of appellants' objections as true, Dartmouth would still have a $100,000 shortfall minus some unspecified fraction of state and federal funding. As long as some shortfall exists, and as long as that shortfall is made up by Dartmouth's general tax levy, the precise size of that shortfall is irrelevant for purposes of judging the rationality of the use fee at issue. More importantly, none of appellants' objections to the $127,888.23 figure raises an issue as to whether Dartmouth's perception that residents were paying a disproportionate share of harbor costs was unreasonable or irrational. Because appellants raised no genuine issue of material fact, the district court was not, as appellants claim, obligated to allow them to present conflicting testimony and other additional evidence or to cross-examine Dartmouth's witnesses before granting summary judgment. To the extent appellants attack the overall credibility of the affiants and the veracity of the information contained in their affidavits, such objections were never raised before the district court and thus are waived on appeal. Atlas v. Eastern Air Lines, _____ __________________ Inc., 311 F.2d 156, 162 (1st Cir. 1962), cert. denied, 373 U.S. ____ ____ ______ 904 (1963). 11 Appellants also claim that Dartmouth failed to show any relation between its shortfall and nonresidents' use of the harbor. As the district court correctly pointed out, "the relevant question is not really whether the costs of certain -12- the Massachusetts boat excise tax, half of which is deposited into Dartmouth's general fund. Aside from the fact that both residents and nonresident boaters pay this tax equally, appellants' argument fails because the revenues from the excise tax do not even come close to covering the shortfall in harbor costs which residents must pay for. Only $28,122 was placed into the town's general fund from the excise taxes. Even if we incorrectly attribute this entire amount to nonresident contributors, we still have a shortfall for harbor related expenses of $99,766.23 ($127,888.23 in municipal services minus $28,122.00 in excise tax revenues going to the general fund). Thus, with the excise taxes included in the calculus, there still remains a sizeable pool of funds used for harbor services to which residents disproportionately contribute.12 Nevertheless, appellants argue that their payment of slip rental fees compensates for any inequality between ____________________ waterfront services are attributable to nonresidents' use of the ____________ harbor, but instead whether nonresidents avail themselves of _____ those services and can thus fairly be required to pay their share of the costs." Appellants' argument is irrelevant to the issue of whether nonresidents are contributing equally to the entire pool of funds used for waterway maintenance. The presence of such an inequality is all that is required to find Dartmouth's use fee rationally related to a legitimate legislative goal. 12 We do not consider the further and very questionable proposition that if the amounts from the excise tax closed the gap between harbor related expenses and harbor related revenues, Dartmouth would, on that basis alone, violate the Fourteenth Amendment by imposing the disparate use fee. Other factors, such as the need to address the problem of rising waterfront costs or simply the vagaries of the legislative process, militate against the conclusion that Dartmouth would be acting irrationally if it failed to consider the excise tax revenues when it established the use fee. -13- themselves and other residents because those fees are paid to the New Bedford Yacht Club which itself, allegedly, pays real estate taxes to Dartmouth's general fund. Appellants made this argument to the district court during the hearing and in appellants' supplemental memorandum.13 We question whether the manner in which appellants raised the issue was sufficient to properly place it before the district court as the record contains no affidavit or other evidentiary foundation, beyond the mere statements by appellants' counsel, concerning the alleged fact that appellants paid slip rental fees. In any event, the fact that appellants pay slip rental fees does not present any question of material fact as to the rationality of Dartmouth's use fee schedule. First of all, there is nothing in the record indicating how much, if any, real estate taxes are paid by the Yacht Club and what percentage, if any, of those taxes are attributable to slip fees paid by appellants. Appellants' argument is thus a mere assertion which is insufficient to raise a triable issue. Rogers v. Fair, 902 F.2d ______ ____ 140, 143 (1st Cir. 1990) (finding that the nonmovant must adduce specific, provable facts to defeat an otherwise proper summary judgment motion). Even if we assume that some amount of the slip fees paid by appellants are passed on to Dartmouth's general fund, however, the town could still reasonably conclude that the level ____________________ 13 The district court briefly alluded to the slip rental fees in a footnote to its decision. -14- of nonresident contributions is less than the total tax burden imposed on residents. Not all nonresident boaters pay slip rental fees; many simply moor their boats in the harbor without renting space from a Yacht Club or other private organization. In the case of nonresident boaters who do pay slip rental fees, one might reasonably conclude that yacht clubs are unable to pass on to their boating customers the entire pro rata share of municipal taxes attributable to boaters who rent slips. Dartmouth could reasonably conclude that, for various economic reasons, businesses can increase their prices by only some fraction of the tax imposed on them. Under this assumption, boaters renting slips would pay a proportionately smaller share of real estate taxes than residents. Consequently, Dartmouth's general rule that distinguishes between residents, who directly pay municipal taxes, and nonresidents, who contribute indirectly or not at all, is rationally related to the disproportionate burdens placed on harbor users, even though this rule may overlook some variations in the contributions made by individual nonresident boaters. See ___ Baldwin, 436 U.S. at 391 ("We perceive no duty on the State to _______ have its licensing structure parallel or identical for both residents and nonresidents, or to justify to the penny any cost differential it imposes in a purely recreational, noncommercial, nonlivelihood setting."); Dandridge v. Williams, 397 U.S. 471, _________ ________ 485 (1970) ("If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the -15- classification 'is not made with mathematical nicety or because in practice it results in some inequality.'") (quoting Lindsley ________ v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911)). In this _________________________ case, we fail to see how Dartmouth's alleged failure to consider the payment of slip rental fees when implementing its use fee could constitute an unreasonableness of constitutional proportions. Appellants finally contend that their payment of slip rental fees puts them in substantially the same position as other parties that qualify as "residents" under Dartmouth's use fee ordinance. "Residents" include registered voters of Dartmouth and persons domiciled in Dartmouth. Both classifications encompass persons, such as renters and those living with friends or relatives, who, like appellants and other nonresidents, either do not pay any real estate taxes to the town or only pay taxes indirectly through rental payments. The residency definition also includes, as a separate category, persons paying real estate taxes to Dartmouth; this implies that the other residency categories refer to nontaxpayers. Appellants argue that because the use fee definition of a resident includes many "residents" who make the same contribution to Dartmouth's general fund as nonresidents make, the fee structure is not rationally related to the goal of equalizing the burdens of harbor maintenance. Dartmouth responds, reasonably we think, that it tried to make its residency definition as liberal as possible while at the same time imposing a larger fee on people who use its -16- waterways exclusively without contributing much to the town's general fund. In broadening the residency definition to include persons other than local taxpayers, the town may reasonably conclude that renters and voters make other contributions to the town -- by, for example, participating in local community life and in the local economy -- that nonresident boaters do not make. Cf. Nordlinger, 112 S. Ct. at 2335 ("For purposes of rational- __ __________ basis review, the 'latitude of discretion is notably wide in . . . the granting of partial or total [tax] exemptions upon grounds of policy.'") (quoting F.S. Royster Guano Co. v. Virginia, 253 _______________________ ________ U.S. 412, 415 (1920)). In the context of a broader fee schedule that generally distinguishes between persons who are more likely to pay property taxes and persons who are less likely to pay property taxes, Dartmouth's decision to treat renters of a boat slip differently from renters of a dwelling does not constitute impermissible discrimination. It is well established that a statute need not be precisely tailored to fit its legislative goal in order to meet the rational relationship test. Baldwin, 436 U.S. at 390 ("'That _______ [the state] might have furthered its underlying purpose more artfully, more directly, or more completely, does not warrant a conclusion that the method it chose is unconstitutional.'") (quoting Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 813 ______ _______________________ (1976)); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. _________________________________ ______ 307, 316-17 (1976). The fit between Dartmouth's residency definition and the goal of equalizing burdens among boaters may -17- not be precise or entirely consistent, but neither is it so tenuous as to render the ordinance irrational under the Constitution. We find, therefore, that Dartmouth's use fee is sufficiently related to a legitimate legislative goal to pass constitutional scrutiny under the Fourteenth Amendment. III. IMPERMISSIBLE REGULATION OF THE WATERWAYS IMPERMISSIBLE REGULATION OF THE WATERWAYS Appellants contend that Dartmouth's discriminatory use fee constitutes an impermissible regulation of the nation's waterways. In addition, they argue that Dartmouth's actions in this case are preempted by extensive federal legislation and regulation in this area. In conclusion, appellants state that "Dartmouth's actions in assessing the use fees is, therefore, violative of the commerce clause in that it (1) is preempted by _________________________________ federal legislation and (2) it unreasonably impairs access to navigable waters" (emphasis added). To the extent appellants' impermissible regulation claims depend on the Commerce Clause of the Constitution, as the above language suggests, we are unable to consider them in our review of the summary judgment decision. The district court found that appellants lacked standing to raise a claim under the Commerce Clause and appellants do not challenge this finding on appeal.14 Even if these claims are independent of the Commerce Clause, however, they lack sufficient merit to require a reversal. ____________________ 14 Appellants, in fact, conceded that they lack standing under the Commerce Clause at oral argument. -18- Appellants are correct in their observation that navigable waters of the United States are public property and cannot be obstructed or impeded so as to impair the right to their navigation. Harman v. Chicago, 147 U.S. 396, 412 (1893). ______ _______ However, they are also correct in acknowledging that a state may exact a reasonable harbor fee to defray the costs of harbor traffic. Clyde Mallory Lines v. Alabama, 296 U.S. 261, 267 ____________________ _______ (1935). In the present case, appellants fail to point out how Dartmouth's disparate usage fee impairs access to navigable waters in any way, unreasonably or otherwise. Boaters can pass through Dartmouth and even stay in Dartmouth for a few nights without being required to pay any usage fee at all. Furthermore, the use fee, as discussed above, provides a reasonable method of defraying the costs of waterways maintenance. Appellants also provide no support for their claim that federal law preempts Dartmouth's use fee. "[W]here a congressional statute does not expressly declare that state law is to be pre-empted, and where there is no actual conflict between what federal law and state law prescribe, [the Supreme Court has] required that there be evidence of a congressional intent to pre-empt the specific field covered by the state law." Wardair Canada Inc. v. Florida Dep't of Revenue, 477 U.S. 1, 6 ____________________ _________________________ (1986); accord Wisconsin Public Intervenor v. Mortier, 111 S. Ct. ______ ___________________________ _______ 2476, 2481-82 (1991). For a preemption claim to succeed, the intention of Congress must be clearly manifested, implicit from a pervasive scheme of federal regulation that leaves no room for -19- state and local supplementation, or implicit from the fact that the federal law touches a field in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Mortier, 111 S. _______ Ct. at 2481-82 (internal quotations omitted). The appellants have failed to demonstrate any intent on the part of Congress to preempt boat user fees, nor have they shown any conflict between federal waterways laws and the state and local laws in this case. None of the legislation cited by appellants -- The River and Harbor Improvements Acts, 33 U.S.C. 540 - 633; The Rivers and Harbors Appropriation Act of 1954, Pub. L. No. 83-780, 101, 68 Stat. 1248, 1253; and the proposed but not enacted Shipbuilding Trade Reform Act, most recent version at H.R. 2056, 102d Cong., 2d Sess. (1992) -- express any intent to preempt local user fees, nor do we find a pervasive regulatory scheme or dominant federal interest that precludes such fees. The fact that federal law has implemented boater use fees does not, by itself, present a conflict with local fees of the same nature where there is no reason to believe that the two fees cannot coincide or that the local fee interferes in some way with the federal one. Appellants provide no basis for finding such interference. Consequently, we find no federal preemption of Dartmouth's use fee. Cf. Beveridge v. Lewis, 939 F.2d 859 __ _________ _____ (9th Cir. 1991) (finding no federal preemption of local moorage restrictions by the Ports and Waterways Safety Act of 1972, 33 U.S.C. 1221 et seq.). ______ -20- Accordingly, we affirm the grant of summary judgment. _______________________________________ -21-